UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

DONNIE WHITE,
    Plaintiff,

vs.             07-1311

EDDIE JONES, et al.,
    Defendants.

MEMORANDUM OPINION AND ORDER

    Before the court are the Defendant, Hosaia Brown's summary judgment motion [187], the Plaintiff, Donnie White's response [189] and the Defendant's reply [190]. Defendant moves for summary judgment pursuant to "730 ILCS 5/2-1005," a statute that does not exist. The court reasonably assumes this was a typographical error and based on contents of the Defendant's memorandum, his intention was to move pursuant to Fed. R. Civ. Pro. Rule 56 and 42 U.S.C. 1997e(e) .

Standard

    Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Any discrepancies in the factual record should be evaluated in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). The party moving for summary judgment must show the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

    "Summary judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2000). "If a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it." Fed. R. Civ. P. 56(e). A party opposing summary judgment bears the burden to respond, not simply by resting on its own pleading but by "set[ting] out specific facts showing a genuine issue for trial." *See* Fed. R. Civ. P. 56(c). In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "If [the nonmovant] does not [meet his burden], summary judgment should, if appropriate, be

entered against [the nonmovant]." Fed. R. Civ. P. 56(e). Further, "[t]he plaintiff cannot merely allege the existence of a factual dispute to defeat summary judgment …. Instead, he must supply evidence sufficient to allow a jury to render a verdict in his favor." *Basith v. Cook County*, 241 F.3d 919, 926 (7th Cir. 2001). Specifically, the non-moving party "must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial." *Filipovic v. K&R Express Systems, Inc*., 176 F.3d 390, 390 (7th Cir. 1999). Failure by the non-movant to meet all of the above requirements subjects him to summary judgment on his claims.

Affidavits must be based on the personal knowledge of the affiant and "set out *facts* that would be admissible in evidence." Fed. R. Civ. P. 56(c)(4) (emphasis added). Personal knowledge may include inferences and opinions drawn from those facts. *Visser v. Packer Eng. Assoc., Inc.*, 924 F.2d 655, 659 (7th Cir. 1991). "But the inferences and opinions must be grounded in observation or other first-hand personal experience. They must not be based on flights of fancy, speculations, hunches, intuitions or rumors remote from that experience." *Visser*, 924 F.2d at 659. It is also well settled that "conclusory allegations and self-serving affidavits, if not supported by the record, will not preclude summary judgment. Keri v. Barod of Trustees of Purdue University, 458 F.3d 620, 628 (7th Cir.2006)(*citing Haywood v. N. Am. Van Lines, Inc.,* 121 F.3d 1066, 1071 (7th Cir.1997).

Background

Plaintiff, an inmate at Tamms Correctional Center, has pending a Complaint that alleges, inter alia, that Defendants violated his constitutional rights while he was at Pontiac Correctional Center for three days for a court writ to the United States District Court for the Northern District. Specifically, he alleges that while he was held at Pontiac Correctional Center between April 22, 2007, and April 25, 2007, he was not given any food and that he was placed naked in a dirty cell without sheets or blankets, toilet paper or other hygiene items. He also alleges that he was deprived of his legal documents that he had brought with him for court, and that these actions were in retaliation for a lawsuit he had filed in the Southern District against staff at Tamms. Plaintiff claims he complained to Defendant Brown, and that Defendant Brown did nothing to help him.

Material Facts Claimed to be Undisputed

1. Between April 22, 2007, through April 25, 2007, Plaintiff was housed at Pontiac Correctional Center, although his parent institution was Tamms Correctional Center. (Complaint.)
2. At all times relevant to this case, Defendant Brown was employed at Pontiac Correctional Center. (Complaint.)
3. Plaintiff filed three grievances concerning the events of April 22, 2007, through April 25, 2007. (Deposition of Donnie White, p. 88-99, relevant pages of which are attached as Ex. A to Co-Defendants' Motion for Summary Judgment [Doc. 169] (hereinafter "Ex. A".)

2

4. The first grievance, dated April 25, 2007, was filed as an emergency grievance. (Grievance attached to Ex. A as White Dep Ex. 0001-0004.)
5. After the warden's office determined that the allegations did not constitute an emergency, Plaintiff sent it to the counselor, and then to the grievance officer and warden's office, who denied the grievance. (White Dep. Ex. 0001.)
6. Plaintiff also sent a copy of this grievance directly to the Administrative Review Board. (White Dep. Ex. 0067-70.)
7. A third grievance filed by Plaintiff regarding the events of this writ is dated June 17, 2007. (White Dep. Ex. 5-6.)
8. Defendant Brown is not mentioned in any of these grievances. (Ex. A, p. 96-7; White Dep. Ex. 0001-0006, 0067-70.)
9. Although Plaintiff claims that the names of some of the Defendants in this case were not included because he did not know their names, Plaintiff did not include any identifying information regarding any of those Defendants or indicate that he wanted to name other individuals but did not know their identities. (Ex. A, p. 92.) White Dep. Ex. 0001-0006, 0067-70.)
10. Plaintiff concedes that the staff at Pontiac wear name tags. (Ex. A, p. 94.)
11. He also claims that some names were "inadvertently left out from speed writing." (Ex. A, p. 98.)
12. The only effort Plaintiff made to identify the individuals whose identities he now claims he did not know at the time was to ask a couple of inmates who were going to Pontiac to find out who normally worked galleries one and three. (Ex. A, p. 93.)
13. The ARB denied these grievances. (White Dep. Ex. 0066, 72.)

Applicable Law and Arguments

Exhaustion of Administrative Remedies

Pursuant to the Prison Litigation Reform Act (PLRA") all prison inmates bringing an action under 42 U.S.C. 1983 with respect to prison conditions must first exhaust all administrative remedies that may be available to them before being allowed to proceed with the lawsuit. 42 U.S.C. 1997e(e). Pursuit of administrative remedies is necessary no matter what relief the Plaintiff seeks, including monetary damages. *Pavey v. Conley*, 544 F.3d 739, 740 (7th Cir. 2008). Section 1997e(e) makes exhaustion a precondition to filing suit. *Perez v. Wisconsin Dept. of Corrections*, 182 F.3d 532, 535 (7th Cir. 1999). In order to fully exhaust administrative remedies, inmates are required to file a grievance regarding an issue at the institutional level, receive a response from the Chief Administrative Officer of the institution ("Warden"), and if the Warden denies the grievance, appeal the denial to the Administrative Review Board ("ARB") within 30 days. 20 Ill. Admin. Code 504.850. This grievance must be filed within 60 days of the incident, and it must contain factual details regarding each aspect of the inmate's complaint, including what happened, when, where and the name of each person who is the subject of the complaint. 20 Ill. Admin. Code 504.810(b). An inmate who does not know the individual's identity may still file a grievance, but he must include as much descriptive information about them as possible. *Id.* If an inmate cannot prepare his grievance unaided he can request staff

3

assistance. 20 Ill. Admin. Code 504.810(c). Once a decision has been rendered at the institutional level, the inmate must appeal within 30 days any adverse result to the Director of the Department through the Administrative Review Board. 20 Ill. Admin. Code 504.850. The inmate's administrative remedies are not exhausted until the appeal is ruled on by the Director through the Board. *Crowder v. Lash*, 687 F.2d 996, 1005 (7th Cir. 1982).

Defendant's arguments: Plaintiff has failed to exhaust his administrative remedies regarding his claims. Plaintiff alleges that Defendant Brown was among the staff at Pontiac who violated his rights during a three-day stay there for a court writ in 2007. As an inmate, Plaintiff was required to grieve this issue. However, Plaintiff failed to do so. The only grievances Plaintiff filed regarding the events of this court writ are attached to the Memorandum of Law in Support of the Motion for Summary Judgment filed by Defendant Brown's Co- Defendants, and none of these grievances mentions Defendant Brown. Although Plaintiff claims that some of the Defendants' names were left out because he didn't know them, the staff at Pontiac wore name tags, and Plaintiff made no serious effort to find out their identities. Additionally, although the Department's grievance rules allowed him to file a grievance against individuals whose identities he did not know, he was required to include identifying information. Not only did Plaintiff not do this, but he does not even indicate in his grievances that he intended to name other individuals whose identities he did not know. In fact, on page four of the April 25, 2007, grievance, Plaintiff states, "all Pontiac Corr. Ctr staff involved:" which he then follows with a list of 10 individuals. Nothing in the grievances suggests that Plaintiff intended to grieve any other Pontiac staff members. Because Plaintiff did not name or otherwise identify Defendant Brown, he failed to exhaust his administrative remedies on his claims against him.

Plaintiff's responses to Defendant's arguments: In response the Plaintiff argues that Mr. White exhausted his administrative remedies because his grievance put all the Defendants on notice of the claims against them by providing the dates, locations, and circumstances surrounding his injuries. The failure to name particular defendants, whose names were not known to Mr. White, did not undermine his effort to exhaust administrative remedies. The facts relating to Defendant Brown are identical to the facts relating to the other Defendants who have moved for summary judgment. Mr. White concedes that he did not identify Defendant Brown by name in any grievance he filed with the Administrative Review Board. Nonetheless, the motion for summary judgment should be denied because Defendant Brown was put on notice of the claims against him by Mr. White's factually specific grievance. [Doc. No. 170 at 8.]

Further, Plaintiff argues there are two additional reasons Mr. Brown's motion for summary judgment should be denied. First, subsequent to the briefing of the motion for summary judgment, on May 10,2010, an employee of the ARB acknowledged to Mr. White that his grievances probably exhausted his administrative remedies. [Doc. 189, PL's Ex. A, Letter from Benton to White (May 11,2010.] This ARB official, Sherry Benton, is the same employee who reviewed Mr. White's April 25, 2007 grievance regarding the conditions at Pontiac Correctional Center. ( Doc. 189, PL's Ex. B., Letter from Benton to White (July 30,2007).) By letter, Mr. White asks Ms. Benton if he would have exhausted his institutional remedies by filing a grievance in which he named only some staff involved in an incident, but left others off

4

because he did not know their names. *Id*. In response, Ms. Benton stated that this would be vague, but "would probably be considered to have exhausted." *Id.* Plaintiff asserts that a reasonable reading of this letter is that the ARB deems a grievance to have exhausted administrative remedies despite not identifying every potential defendant by name.

Second, the ARB's acknowledgment, coupled with its rejection of Mr. White's grievance on the merits, demonstrates that the grievance contained sufficient factual details to put the Defendants on notice of Mr. White's claims and, therefore, exhausted Mr. White's administrative remedies. *See Rivera v. Walker*, No. 05-595-WDS, 2008 U.S. Dist. LEXIS 88787, at *11-12 (S.D. 111. June 10,2008). As we have previously argued, in Rivera "the prison did not reject the grievance for lack of specificity or for noncompliance with the regulations," but
resolved it on the merits and, therefore, the prison "waived any noncompliance by processing the grievance all the way through the ARB stage without complaining that the grievance did not name the persons who were the subject of the complaint." *Id.* After all, "[i]f the grievance did not comply with the requirements of the grievance system, the prison could have rejected it on that basis." *Id.* Plaintiff argues that in this case, the prison rejected Mr. White's grievance on the merits and, while the prison letter is not free of qualifications, it advised Mr. White that he had no further actions to take. Plaintiff further argues that it is reasonable to conclude that Mr. White exhausted his administrative remedies when there was no indication by the ARB that his grievance was deficient. (Doc 189, Pl's Ex. B.)

Conclusion

First, Plaintiff wants the court to interpret ARB Chairperson Sherry Benton's letter as an acknowledgment by Ms. Benton that he exhausted his administrative remedies on the claims against Defendant Brown. Ms. Benton's job is to respond to grievances from inmates, not make legal conclusions like determining whether an inmate exhausted his administrative remedies pursuant to the PLRA. Moreover, the response is not unequivocal, since it states only that Plaintiff "would probably be considered to have exhausted." Moreover, Plaintiff's question was a vague hypothetical question that inquires about facts that are completely unsupported by the evidence. In essence, Plaintiff asked whether his failure to name staff whose names he did not know when he filed the grievance meant that he did not exhaust against those individuals. This is not a case where Plaintiff would have to peel back layers of bureaucracy and match a disputed decision with the prison employee responsible for that decision. He is claiming this particular Defendant, Brown violated his constitutional rights when he was denied meals, caused to live in inhumane conditions of confinement, deprived of his legal documents that he had brought with him for court and that these actions were in retaliation for a lawsuit he had filed in the Southern District against staff at Tamms. Plaintiff claims he complained to Defendant Brown, and that Defendant Brown did nothing to help him. If he actually complained to Defendant Brown about the prison conditions, denial of meals and legal documents, then he should be able to at least describe him by position, physical description, etc. IDOC rules allowed Plaintiff to file a grievance against individuals whose identities he does not know; however he was required to include identifying information. Not only does Plaintiff not do this, he does not even indicate in

5

his grievances that he intended to name other individuals whose identities he did not know. In fact, on page four of the April 25, 2007, grievance, Plaintiff states, "all Pontiac Corr. Ctr staff involved:" which he then follows with a list of 10 individuals. Nothing in the grievances suggests that Plaintiff intended to grieve any other Pontiac staff members than those listed. Because Plaintiff did not name or otherwise identify Brown, he failed to exhaust his administrative remedies on his claims against him. Consequently, Brown is entitled to summary judgment in his favor.

It is therefore ordered:

1. Pursuant to 42 U.S.C. 1997e(e) and Fed. R. Civ. Pro. Rule 56(c), Defendant Hosai Browns' motion [187] is granted. The clerk of the court is directed to terminate Defendant Hosai Brown, forthwith. The clerk of the court is directed to enter judgment in favor of Defendant Hosai Brown <u>at the close of this case</u>.
2. If the plaintiff wishes to appeal this dismissal, he must file a notice of appeal with this court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal *in forma pauperis* should set forth the issues the plaintiff plans to present on appeal. *See* Fed. R. App. P. 24(a)(1)(C). If the plaintiff does choose to appeal, he will be liable for the $455.00 appellate filing fee irrespective of the outcome of the appeal. Furthermore, if the appeal is found to be non-meritorious, the plaintiff may also accumulate a strike under 28 U.S.C. 1915(g).

Enter this 8th day of March, 2011.

/s/ Joe B. McDade
_____
Joe Billy McDade
Senior United States District Court